Good morning, Your Honors. Just as an initial housekeeping matter, because separate issues were raised in the two briefs submitted by the Belts, I'll be handling the first five minutes or so. I'll address both issues. Then Mr. Gray will be doing the rebuttal on behalf of the Belts. I want to make one point regarding the vulnerable victim enhancement issue that I raised for Bailey Belt. The notion that I want to address is that vulnerability alone is not sufficient to support the enhancement applied by Judge Lange in this case. Almost all crime victims are vulnerable at some point during the crime that's at issue. The vulnerability, and I'm using the language that was in the Johnson case from this court in 2017, the must be based on circumstances separate and distinct from that which may reasonably be considered part of the conduct underlying the charged offense. Does it matter that there were two charges and the guidelines just take the top one, right? The guideline calculation is for the murder count. Correct, Your Honor. Does that affect how you look at it? It does in a way that benefits Bailey Belt because as Mr. Bailey Belt was charged in this case, he was charged with killing Elijah Morrison by assaulting him and striking him with the car. The assault, which was the infliction of head injuries with the shovel, was charged in the indictment and presented to the jury as a mechanism of the murder. Did the jury have to find that? The jury could find either the way it was presented, but the government presented Dr. Snell's testimony, the pathologist, and he said, and it was unrebutted and unrefuted, that the injuries to Elijah Morrison's head were a contributing cause of his death. So the automobile injuries and the head injuries coextensively led to his death. Remember, Elijah Morrison was alive when law enforcement arrived. Law enforcement even said he was standing up. And so then the pathologist says, hey, both of these injuries caused his death. The assault that led him to being semi-conscious or unconscious at some part is part and parcel of the murder charge for which he was convicted and sentenced. And so this is similar to the Johnson case where, in that case, which was a horrific case, where this woman was raped over a period of weeks. She was secreted in a house during inclement weather, and at some point the defendant cut her clothes off with a knife and left her naked. The court said in this case, in that case, her nakedness was part of the conduct underlying the rape. That wasn't sufficient for the vulnerable victim enhancement. What was was her isolation in this house during inclement weather from which she could not escape. That's very similar to what happened here. So, counsel, are you saying that the victim must have a pre-existing vulnerability for the enhancement to apply? I think there's pre-existing conditions are often a thread through the case law, like cognitive deficiencies or being elderly or having dementia. There's no case that says it has to be pre-existing, but there is case law that says it should be separate and distinct from the facts that are the nexus of the crime of conviction. And in this case, that was. And, you know, this enhancement led to a 60-month increase in my client's sentence, functionally, that's the prejudice here. In regard to the Exhibit 184 issue, the. This is Judge Smith. Would there be a difference if instead of hitting the victim with a shovel, there had been a giving of a sedative or something of that nature? Would that be different? I believe so, Your Honor, because that wouldn't have been charged unless that was somehow made its way into the indictment, the charging instrument. You know, in this case, the shovel assault was one of the alleged facts supporting the indictment. And so if there was, and I believe there are some cases where involuntary intoxication has been considered a basis for the enhancement. But that certainly wasn't the case here. What we have here is a fact that was charged in the indictment, found by the jury, being used for an enhancement. What is the logic of separating a violent means of rendering a person vulnerable versus a nonviolent means of rendering a person vulnerable? Well, I think because it goes to the unique or the unusual vulnerability. It's not really whether it's violent or not violent. The guideline is only supposed to apply in unusual circumstances. And here, as we find all too often, violent assaults that lead to death involve a number of different mechanisms. And over time, certainly the victim becomes vulnerable, but it's all part and parcel of the charged offense. I'm going to sit down unless there's any other questions. So I leave time for Mr. Gray to discuss 184. Thank you. Are you going to do that now? No, he's going to do that in rebuttal, Your Honor. Why don't we do it now so that we can have both of the issues presented to us and then counsel for the government can respond to both if that would work. Certainly, however the court wishes. If we need to give you some rebuttal time, we'll work that out when the time comes. Good morning. Thank you for your recognition, counsel. I'll be addressing the other issue involving what we've been calling Exhibit 184. That would be the recordings that occurred at the residence where Elijah Morrison died. And at trial, it was our argument that the snippets of a video of a security camera should not be admitted into evidence because of the inference that it looked like pieces of those recordings that we would have expected to be there weren't there. And so the ultimate issue that we're asking the court to address today is although it's a low bar for authenticating evidence under Rule 901, there is still a bar there. And the authentication requirements still need to be met. And if we turn to the McMillan factors, one of the most important factors that we would submit is number four, and that is showing that there's not been any changes, additions or deletions have not been made to the recording. And it's our position that in this case, when we looked, when law enforcement sees those recordings from the phone of Sybil Lone Eagle, went back to their office, reviewed them, and it's an inference that I think is very reasonable that the recordings are being made because the security camera is movement-based. – Was there anything in the record to say that? Whether it was motion activated or otherwise? – So we don't have any testimony. We don't have any witness saying, I'm familiar with the camera. In fact, we don't know what type of security recording that it was. The inference would be just watching these various snippets to say, why is the camera on at certain points? Why does it shut off at certain points? – And you could also say that there's, I mean, this isn't part of your argument, that there are chunks of activity that are not in this recording at all, right? That it's missing some of the key allegations in the case. – That's correct. – Which, if it were motion activated, should be included? – Should be included. So if we look at various segments, again, because we don't have the record, I'm sorry, the video recording device itself, we don't know what specifically causes its record, but it appears that it's movement. And we see movement at the location of where Mr. Morrison ultimately dies. It appears that we see people moving there at various snippets, and that causes the camera to start recording. – Go ahead, I'm sorry. – So we would expect, if a car was driven over someone, we would have expected the security camera to record that. – And is that even enough? I mean, it's, you've got a, I think Judge Lang was noting that this is, this just operates on its own, right? It's on the outside of a home. There's not an operator like typically with some of these cases where you have an officer who's running some kind of recording that then has to testify about how he or she operated that and how it works. Here we have something that is just running on its own. How do we handle that as an evidentiary matter, as a matter of foundation? Do we look to the Macmillan factors? Do we have to do something different? – So I would say that we do look to the Macmillan factors. Now, obviously, when that was decided in 1974, security cameras operated very differently. But as we come forward in time, given how many recordings we're likely going to keep seeing in cases, I think it's important that we do extend and apply Macmillan to a case like this. Because the question is, why are certain recordings missing? This isn't law enforcement that was initially controlling the camera. It's a third party. It's a relative of the victims in this matter. – And yet, really, is it that person operating? I guess my question is, this is just a different kind of recording. And if you're talking about, is the operator able to, you know, use this particular machine, who's the operator here? That's a question that we, in one sense, don't have the answer to. Because we would expect to see all these recordings on the phone, but we've got gaps. Where did those gaps come from? Was the bolognagle operating? Did she have to actively download the recordings to her phone before she gave it to law enforcement? If that's what she did, did she choose which recordings to download? Or if all the recordings came to her phone, did she select which ones to delete? Would have been an easy process for her to do that. That's where the problem comes in, in terms of the Macmillan factor, saying, well, is there at least a reasonable inference that this has been altered or changed or deleted in some way? Our argument is, yes, there is. As the government has the burden to establish the authenticity, they should at least have some kind of an answer for us as to what was going on. I see that my time has expired, if I may. So the burden should really be on them to establish what kind of camera it was, how was the recording made, could it have been deleted? The record's absent in that respect. And that's why authentication should fail. Thank you. Good afternoon. Thank you. May it please the court, counselors. I'm going to sort of touch these in the order they were presented to you. As to the vulnerable victim enhancement, Elijah Morrison was beaten semi-conscious. I know we're going to talk about Exhibit 184 in a minute, but there's a point on there where it appears somebody's yelling, run him over. Now, a person with the ability is going to get out of the way of that car that's about to run him over, but he didn't. He was run over by a vehicle as he lay on the ground. I think everyone would agree that he was vulnerable. I don't think there's a dispute about his actual vulnerability, but it's whether when the government charges both the act that made him vulnerable and the act that ultimately killed him in the same charge, can you then get the enhancement for making him vulnerable? Or I'm sorry, for him being vulnerable. But they're separate charges still. The murder is separate from the assault with a dangerous weapon. Now, the jury could have concluded that they were not guilty of the assault with the dangerous weapon because it wasn't established or it wasn't witnessed, or they were guilty of the murder or vice versa. So yes, they were charged with both, but they were separate charges. It wasn't all so intertwined. And another reason that Bailey received a higher sentence is he also had charges for assaulting Conan Morrison. Conan Morrison was struck in the head with a shovel and life flighted to Rapid City. So there were two victims for Bailey Belt. So that sort of is another factor in why he received the higher sentence than the co-defendant, Theodora Belt. As it pertains to Exhibit 184, we own the gaps. The United States absolutely owned the fact that there were gaps in the recording. We even had the FBI cart team put it together in order to be played that showed how long of a gap it was. I do want to apologize for one thing. I think I generically referred to it as a ring doorbell camera in my brief. We don't know what type of recording device Ms. Lone Eagle had. Unfortunately, Ms. Lone Eagle died. And her grandson, MHH, who testified at the trial was unaware of what kind of recording it was. He just knew that grandma had a recording device and it sent videos to her phone. Yeah, under McMillan, why don't you need it and appreciate you're sort of owning the gaps because they are there. But putting that aside, just there still is the foundational problem that there are a lot of questions. There's nobody really there for the defendants to cross-examine about how this video was created. You watch it and you've got a lot of questions. Why aren't there some really basic foundational problems here with this exhibit? What kind of a camera is it? What makes it actually record? Is it motion activated? Is it something else? How does it get downloaded onto the app? What does the user do to make that happen? Seems like there's just a lot of questions that the agent was understandably unable to answer. Why isn't that the big problem here? I think it's important to remember that McMillan isn't a punch list. We don't have to have each and every one of the factors there. And as Judge Lang noted, then this would go towards the weight that the jury would give the evidence and not so much whether or not it cleared that low bar for admissibility. But one of the things the jury would have to consider is whether it actually displayed for them what happened that night and without any ability to have a witness for the government or the defendant to ask questions of to tell the jury how they should assess the weight they should give that video. That seems to be, again, kind of the precursor question before it even gets to that, clearly the jury can assess those things, but it feels like this is a precursor question. But we did have other validating factors, other sources of authentication. Both Conan Morrison and Sarah Morrison identified videos or voices in the video. She identified it as Theo's voice and as Elijah's voice. And that is the argument that you hear happening in front of Sarah Morrison's house. We know that Elijah's car started on fire that evening. And if you watch the video, you can see the fire in the back of the house. We also know that law enforcement arrived at the end. And if you look at the very end of the video, you can see law enforcement arriving. Now, there's no dispute. And I think it was Mr. Gray, they can see this is authentic. This is snippets of what happened that night. I absolutely wish we had it all. But we also know what occurred in some of those gaps. We know what occurred in some of those gaps, because MHH... Counsel, that's kind of my question. What is the interaction of the eyewitnesses and the recording? Do they, as you say, fill in the gaps that the video has? MHH does fill in some of those gaps. He is the owner of the video systems grandson who was home that night. He talks about how he saw Theodora Belt and Bailey Belt kicking Elijah as he's laying on the ground. He testified that we put a still shot of the camera. We didn't show him the footage, but we put a still shot up there and said, is this the view from your deck towards that area? Yes. Does it look like that night? Yes. He identifies the car fire. He identifies Theodora Belt striking Elijah with a shovel that he sees her doing that. He also talks about seeing Elijah get run over with a vehicle. It was Theodora's vehicle. And when the agents, when the FBI arrived the next day and spoke with tribal law enforcement, they gathered some of this information. Tribal authorities determined they had enough information to make an arrest of Theodora and Bailey Belt. And when they went to the residence, they noticed blood on Theodora's car in her driveway. And that's about four or five houses down. Judge Kelly, you did talk a little bit about, is it motion activated? I wish we knew. But I think it's important to remember that the actual incident where Elijah was murdered, you're 200 yards away. So that was a different location because that's a different location than the kicking spot? It would be the same. So if you look at the video, this is strictly my opinion. You see a moth coming up on the screen quite a bit. That could be the motion that's setting it off. But I think we're all familiar enough with motion activated type cameras. They're not picking up what's happening six houses away. You don't want to see every time somebody walks up to your neighbor's house either. And so the location from her house, you have Sarah Morrison's house, you have that vacant lot, and then you have Conan's house. So it is a good distance away. So I don't think it's unreasonable to assume that the motion occurring over in Conan Morrison's driveway is somehow enough to activate a motion activated camera. There was no indication that it was always on. Certainly... Would there have been enough evidence to convict in this case without the video? Judge Smith, that's where I was going to go next was to say that this would have been harmless error even if it was. We need to remember that Bailey and Theodora were arrested immediately following. There were injuries to both of their hands. We have MHH who witnessed Theodora striking with the shovel, saw Theodora and Bailey kicking Elijah as he's laying on the ground, saw him get run over with Theodora's car. And then we have DNA evidence on the bottom of the car where we have Elijah's blood and DNA on the underside of the vehicle, in the wheel well, on the door. And above the steering wheel, there was one blood smudge on the windshield that they did analysis on. It was a mixture of DNA from Elijah Morrison, the victim, and Bailey Belt, the defendant. So there was ample evidence to indicate that Theodora and Bailey were guilty even without the video. Did anyone see either one of the defendants get in the car or in that car? There was testimony that they saw. I believe MHH said he saw a male get into the vehicle, but I don't believe he identified who the male was that got into the vehicle. Our argument to the jury was that blood smudge above the steering wheel on the windshield would happen if someone were to run over a vehicle and their hands come off. And he had been assaulting Elijah. And that's how that mixture of DNA between Elijah and Bailey came to be inside the vehicle. I see my time is up. So unless there are any other questions, thank you. Thank you. If you would like rebuttal, I can give you each a minute or so to address your respective arguments. Thank you, Judge. I appreciate that. I just wanted to correct or clarify the record. Mr. Morley started talking about the assault in response to your question, Judge Kelly, as being part of one of the other charges. The other charges, the ag assault charges, really have no impact. My client got a 120-month concurrent sentence on that. The indictment specifically charges the assault and striking him with the car as the factual basis for the murder charge. So as I said earlier, the assault that rendered him unconscious or semi-conscious was part of the murder indictment. The other thing, in response to Judge Smith, your question about whether there was overwhelming evidence, the government relied extensively on MHH's testimony. Judge Lange acknowledged that MHH's testimony was messy at best. It certainly wasn't conclusive. Neither was the other evidence presented. I'll leave the other minute for Mr. Gray. Thank you. Just briefly addressing whether the issue of harmless error here to follow up on what Mr. Murphy said. Judge Lange did describe MHH's testimony as messy. If you go back through and read his testimony, he was significantly impeached. He admitted under oath that he didn't necessarily recall, that he had given inconsistent statements a year earlier, the day after the incident. He was also with family members as he was getting ready to testify in this particular case. And so to say that that testimony on its own would make this harmless error if a improperly authenticated video was to come in, we strongly disagree with that. The other thing that's important about these recordings, without having the full context, the jury's not able to accurately understand what these recordings mean because the context is not there. That's where the harmful or the prejudicial error comes in. Thank you. Thank you.